Stewart v. Boehme.

Ezra H. Stewart v. Hugo Boehme.

1. ARCHITECTS—*Duty in Superintending Constructions.*—The exercise of ordinary care does not require an architect in superintending the erection of a building, to stand by each workman at all times, to see that he is performing his part of the construction in a proper manner.

2. SAME—*Recommending Material.*—The architect is not in fault in recommending material which was being largely and successfully used in the construction of other buildings, and when a sufficient quantity of it has been used, he is not responsible if it fails to completely answer the purpose for which it was used.

**Memorandum.**—Assumpsit for services. Appeal from the Circuit Court of Will County; the Hon. DORRANCE DIBELL, Judge, presiding. Heard in this court at the December term, 1893, and affirmed. Opinion filed May 22, 1894.

The opinion states the case.

APPELLANT'S BRIEF, HALEY & O'DONNELL, ATTORNEYS.

In the common language of life, he who, being competent and *sui juris* to do any act for his benefit or on his own account, employs another to do it, is called a principal, constituent or employer, and he who is thus employed is called the agent, attorney, proxy or delegate of the principal, constituent or employer. The relation thus created between the parties is termed an agency. Story on Agency, Sec. 3.

We have quoted the above definition of agency for the purpose of referring to some principles of law defining the duties of the agent to his principal, whether it be an attorney, broker or architect. The rights and obligations of either is properly referable to the rules governing the rights, duties and obligations of an agent. The agent is understood to contract for reasonable skill and ordinary diligence—the skill and diligence contracted for always being measured by the skill usually possessed by persons holding themselves out or professing to be able to perform the duties which they undertake to perform—and such agent is consequently liable to his employer for injuries occasioned by the want of reasonable skill, and also for ordinary negligence. Story on Agency, Sec. 183; Whitney v. Martine, 88 N. Y. 535; First Nat'l Bank of Meadville v. Fourth Nat'l Bank of N. Y., 77 N. Y. 320; Heineman v. Heard, 50 N. Y. 320; Gleason v. Clark, 9 Cow. (N. Y.) 57; Leverick v. Meigs, 1 Cow. (N. Y.) 645; Lawler v. Keaquick, 1 Johns. Cas. (N. Y.) 174; Bigelow v. Walker, 24 Vt. 149; Deshler v. Beers, 32 Ill. 368; Gettins v. Scudder, 71 Ill. 86; Fay v. Strong, 32 Ill. 295; Gibson v. Collins, 66 Ill. 136.

An agent who by neglect or want of diligence causes an injury to the business of his employer is liable to his principal for such injury. Rochester v. Lavering, 104 Ind. 562.

And it does not matter whether such services are rendered by the agent gratuitously or for a consideration. Thorne v. Deas, 4 Johns. (N. Y.) 84; Gill v. Middletown, 105 Mass. 477.

Stewart v. Boehme.

Higgins & Aiken, solicitors for appellee.

Mr. Justice Cartwright delivered the opinion of the Court.

Appellant employed appellee, an architect, to prepare plans, drawings and specifications for a business block which appellant was about to erect in the city of Joliet, and to superintend its construction. Appellee was to receive three per cent of the cost of the building except the cost of painting and plumbing. The building was erected, and the sum upon which commission was to be paid was $11,019.45, upon which sum the commission amounted to $330.57. Appellant paid $150 to apply on the commission, and appellee filed the bill in this case for a mechanic's lien to enforce his claim for the balance of $180.50. Appellant answered and defended upon the ground that appellee failed to exercise the degree of skill and diligence contracted for in superintending the erection of the building, in consequence of which appellant had suffered damage exceeding the amount of commission claimed. Upon a hearing the court found in favor of appellee and that there was due him $180.50, and declared the claim to be a lien upon the premises, and directed a sale unless the same was paid within forty days from the date of the decree.

The particulars in which it was claimed that appellee had failed in his duty and entailed consequent damage upon appellant, were in not properly deadening the floors of the second story and in failing to have the roof of the porch sufficiently secured.

The first story of the block was divided into two store rooms, and the occupants could hear noises of walking and conversations, the operation of dental machinery, the groans of patients having teeth pulled, the falling of teeth and instruments on the floor and other noises connected with the occupation of the second story. These noises were not agreeable, and lessened the value of the building for renting purposes. It is claimed that appellee was responsible for the resulting damages. The evidence was that when the

subject of deadening the floors was under discussion, appellee
stated to appellant that they had a new thing for that pur-
pose and that it was mineral wool. Appellee recom-
mended it and it was adopted. He went to Chicago and
took the plan with him, and the manufacturers figured out
how much would be required. He made the specification
accordingly for the mineral wool to be put in an inch and a
half thick. Mineral wool is made from the slag of blast
furnaces by jets of superheated steam or compressed air
blowing the melted slag into fibers. This material was put
between the floor above and a false floor under it, made by
nailing strips on the joists on which boards were placed.
About the ordinary amount was used, and in the way shown
to be proper by the testimony of a manufacturer of the
material. The evidence showed that the mineral wool was
largely used and with reasonable success to deaden floors,
but in this instance, for some reason the floors were not well
deadened. The ceiling below was of corrugated iron, and
there was a shaft between the joists for running dental
machinery with treadles on top of the floor attached to the
shafts which turned partly around. There was also some
evidence that some of the wool was disturbed and not
replaced properly. Whatever the cause may have been, ap-
pellee was not in fault in recommending the material, which
was being largely and successfully used, and the evidence
does not show that an insufficient quantity was used, as
claimed by appellant.

There was a porch at the back of the building running up
to the roof and connected with each floor. The roof of the
porch was blown off in a windstorm. There were posts
supporting the roof, and the ends of the posts were mortised
into the roof timbers, but were not fastened with spikes or
pegs. The roof was only held in place by its own weight.
There was no complaint that the plans and specifications
were improper or did not provide for suitable fastenings,
but the claim was that appellee should have seen that the
contractor put in spikes or pegs. The exercise of ordinary
care did not require appellee to stand by each workman at

all times to see that each spike or peg was driven, and we are not prepared to say that his failure to detect the omission of the contractor in this instance amounted to negligence and a consequent failure of duty to appellant. The decree will be affirmed.